UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATEWAY COMMERCIAL FINANCE, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NRG BUILDING & CONSULTING, INC. and SANDRA J. FISHER,<br><br>　　　　　　　　　　Defendants. | Case No.: 17-mc-0527<br><br>**ORDER RE: THIRD PARTY CLAIM OF WILLIAM W. FISHER TO OWNERSHIP OF LEVIED PROPERTY** |

Before the Court is a third-party claim of William W. Fisher to ownership of levied property, and an opposition by plaintiff/ judgment creditor Gateway Commercial Finance, LLC ("Gateway"), to the third-party claim. (ECF No. 10.) The parties filed supplemental briefs (ECF Nos. 15, 19, 20) and presented additional evidence and argument at hearings on July 24, 2017, and July 31, 2017. For the reasons discussed below, the Court finds that Mr. Fisher has established a valid third-party claim to ownership of the levied funds.

I. **BACKGROUND**

On January 10, 2017, the United States District Court for the Southern District of Florida entered a consent final judgment in favor of Gateway and against NRG Building and Consulting, Inc. and Sandra J. Fisher in the amount of $75,256.89. On April 17, 2017, Gateway registered the judgment in this District

| | |
|---|---|
| 1 | and began enforcement proceedings. (ECF No. 1.) |
| 2 | On June 1, 2017, the U.S. Marshal served a writ of execution on Chase |
| 3 | Bank, which in turn levied $5,449.12 from a savings account held in the names of |
| 4 | William W. Fisher and Sandra J. Fisher. Gateway Opp. (ECF No. 10) at ¶ 2. |
| 5 | On June 15, 2017, the Marshal received a third-party claim from Mr. Fisher |
| 6 | in which he asserts that he, not Ms. Fisher, is the owner of the funds in the levied |
| 7 | account. See id. ¶ 3; Third-Party Claim of William W. Fisher (ECF No. 10 at 5). |
| 8 | He states in a supporting declaration that he is Ms. Fisher's 82-year-old father, that |
| 9 | the funds in the account are his, and that they consist of his income from odd jobs |
| 10 | and Social Security benefits deposited to a Chase checking account and |
| 11 | periodically transferred to the levied savings account. Id. ¶ 5. He says he added |
| 12 | his daughter's name to his accounts so she could help him manage his finances |
| 13 | when he became unable to do so himself. Id. ¶ 6. |
| 14 | On June 26, 2017, Gateway filed an opposition and petition for hearing on |
| 15 | the merits of Mr. Fisher's third-party claim, arguing that Mr. Fisher's evidence was |
| 16 | insufficient to show the levied funds were his. See Gateway Opp. |
| 17 | On July 24 and 31, 2017, the Court held hearings at which the parties |
| 18 | presented additional evidence and argument on the validity of Mr. Fisher's third- |
| 19 | party claim. Mr. Fisher testified that he added his daughter's name to the Chase |
| 20 | account in approximately 2009 because he was having debilitating health |
| 21 | problems and needed her help managing his finances. He reiterated his |
| 22 | declaration testimony that all of the funds deposited in the account were his, except |
| 23 | that in addition to the income from odd jobs and Social Security benefits, he said |
| 24 | the account also contained roughly $4,600.00 that represented a portion of the |
| 25 | proceeds of the sale of a Kubota tractor. Pl.'s Exs. 1, 5. He testified that the tractor |
| 26 | had belonged to him, and that he sold it to a cash buyer in August 2016 for |
| 27 | $5,000.00, with the help of Ms. Fisher, who posted a listing on her Craiglist account |
| 28 | on his behalf. Pl.'s Ex. 3, Invoice No. 300893; Pl.'s Ex. 7. |

1    Ms. Fisher testified that she had never deposited money into the savings account or withdrawn funds from it, and that she had only accessed her father's account to pay his bills online when he was ill.  She concurred that the Kubota tractor belonged to her father, and said that although she helped him sell it using her Craigslist account, neither she nor her company, judgment debtor NRG Building & Consulting, Inc., had any ownership interest in it.

Gateway argued at the conclusion of the hearing that Mr. Fisher's evidence was not credible and failed to meet his burden of proof to show the validity of his claim.  It argued Mr. Fisher's testimony that he earned income from odd carpentry jobs should be discredited, since he lacked a contractor's license.  Gateway also called into question whether Mr. Fisher had credibly established ownership of the Kubota tractor.  It pointed out that he had not mentioned the tractor in his declaration, and suggested the testimony that the tractor was sold in a cash transaction was inherently suspicious.  It also argued that because the tractor had sat on Ms. Fisher's property for several years and was sold using her Craigslist account, it may have actually belonged to Ms. Fisher.

## II. **DISCUSSION**

Pursuant to Fed. R. Civ. P. 69(a), these judgment enforcement proceedings are governed by California law.  Fed. R. Civ. P. 69(a); Credit Suisse v. United States Dist. Ct., 130 F.3d 1342, 1344 (9th Cir. 1997).  California Code of Civil Procedure §§ 720.010, et seq., establishes a claims procedure by which third parties can assert a claim of ownership or interest in property levied upon under a writ of execution.  See Cal. Code Civ. Pro. § 720.110.  The third party must file with the levying authority a claim that includes (1) the name and address of the claimant; (2) a description of the property; (3) a description of the interest claimed, including the facts on which the claim is based; (4) an estimate of the market value of the interest claimed, Cal. Code Civ. Pro. § 720.130(a), as well as a copy of any writing on which the claim is based, § 720.130(b).

After a third-party claim is filed, the creditor may petition the court for a hearing to determine the validity of the third-party claim and the proper disposition of the property that is the subject of the claim. Cal. Code Civ. Pro. § 720.310(a). At the hearing, the third party has the burden of proving an interest in the property by a preponderance of the evidence. Cal. Code Civ. Pro. § 720.360; United Pac. Energy Operations & Consulting, Inc. v. Gas & Oil Techs., Inc., No. 1:11-cv-00756-OWW-SMS, 2011 U.S. Dist. LEXIS 112905, at *7 (E.D. Cal. Sept. 30, 2011). If the third party presents evidence that it owns the property in question, the burden shifts to the creditor to establish that the third-party's interest is invalid or inferior to the creditor's interest in the property. Oxford Street Props., LLC v. Rehab. Assocs., LLC, 206 Cal. App. 4th 297, 307 (2012). At the conclusion of the hearing, the court must determine the validity of the third-party claim and "may order the disposition of the property or its proceeds in accordance with the respective interests of the parties." Cal. Code Civ. Pro. § 720.390; Whitehouse v. Six Corp., 40 Cal. App. 4th 527, 534 (1995).

Mr. Fisher contends that even though the levied account bears his daughter's name, he has a claim of ownership superior to Gateway's interest because all of the funds deposited in the account were his. Generally speaking, "a judgment or levy reaches only the interest of the debtor in the property because a judgment creditor can acquire no greater right in the property levied upon than that of its judgment debtor." Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., 31 Cal. App. 4th 1323, 1330 (1995). "An account is nothing more than a contract of deposit of funds between a depositor and a financial institution," Lee v. Yang, 111 Cal. App. 4th 481, 490 (2003). Multiple-party bank accounts are regulated by the California Multiple-Party Accounts Law ("CAMPAL"), Part 2 of Division 5 of the California Probate Code, § 5100, et seq. See Cal. Fin. Code § 6800. CAMPAL contains provisions prescribing contractual language that should be used to create particular types of multiple-party accounts. See, e.g., Cal. Probate Code § 5132

(identifying various types of multiple-party accounts), § 5203 (setting forth contractual language to be set forth in the "signature card, passbook, contract, or instrument evidencing an account" to create particular types of multiple-party accounts).

Here, although Gateway characterizes the levied savings account as a "joint account," it is not clear from the evidence what type of account it was. Neither the contract creating the account, nor the instrument by which Ms. Fisher was added to it, are in evidence. See Cal. Probate Code § 5203 (providing that a joint bank account is created by including the words "[t]his account or certificate is owned by the named parties. Upon the death of any of them, ownership passes to the survivor(s)" in the "signature card, passbook, contract, or instrument evidencing an account"). Mr. Fisher testified "it was not a joint bank account." Although the bank statement attached to Mr. Fisher's declaration identifies the account signatories as "William W Fisher or Sandra J Fisher," see Decl. Wm. Fisher, Ex. A, the use of the word "or" between the names on a bank account does not presumptively create a joint account. Manti v. Gunari, 5 Cal. App. 3d 442, 447 (1970) ("the use of the word 'or' does not create a joint tenancy"); Estate of Fisher, 198 Cal. App. 3d 418, 427 (1988) (same).

Regardless of the type of account, however, under CAMPAL, "[a]n account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each, unless there is clear and convincing evidence of a different intent." Cal. Probate Code § 5301(a); see Lee, 111 Cal. App. 4th at 490, 491 (noting that "at any point in time the sums on deposit in an account belong to a party in proportion to his or her net contribution" and holding that the "creation of a joint account does not result in a completed gift to the cotenant; rather, the gift occurs when the nondepositing party makes a withdrawal from the account"). Here, Mr. Fisher and his daughter both testified that all of the funds deposited in the account were his, including the proceeds from the sale of the Kubota tractor;

that Ms. Fisher never made any of the deposits or withdrawals and only accessed the account to pay her father's bills online; and that Mr. Fisher's intent in adding her name to the account was merely to facilitate her management of his affairs when he was incapacitated. Under § 5301(a), this undisputed evidence was sufficient to establish Mr. Fisher's ownership of the levied account. See <u>Banc of America Leasing & Capital, LLC v. Sferas Inc.</u>, No. B224787, 2011 WL 1744943 (Cal. App. 2011) (unpublished) (trial court properly upheld third-party claim where claimant showed he had contributed all funds held in an account he shared with the judgment debtor).

Gateway relies on California Probate Code § 5134(b) in an effort to dispel the conclusion that the account belonged to Mr. Fisher. Gateway Suppl. Br. (ECF No. 20) at 2. Section 5134 defines "net contribution"—the term used in § 5301(a)— and provides in pertinent part that:

> (a) "Net contribution" of a party to an account as of any given time is the sum of all of the following:
>
> (1) All deposits thereto made by or for the party, less all withdrawals made by or for the party that have not been paid to or applied to the use of any other party.
>
> (2) A pro rata share of any interest or dividends earned, whether or not included in the current balance.
>
> (3) Any proceeds of deposit life insurance added to the account by reason of the death of the party whose net contribution is in question.
>
> (b) In the absence of proof otherwise:
>
> (1) Only parties who have a present right of withdrawal shall be considered as having a net contribution.
>
> (2) The net contribution of each of the parties having a present right of withdrawal is deemed to be an equal amount.

Contrary to Gateway's argument, it is subsection (a) of § 5134, not subsection (b),

that applies here. Mr. Fisher's evidence established that all of the deposits to, and withdrawals from, the levied savings account were made by or for him. Under § 5134(a)(1), this evidence established that all of the net contributions to the account were his. Gateway relies on § 5134(b), arguing that because Ms. Fisher testified she had the ability to withdraw money from her father's savings account, she had a "present right of withdrawal" and should be deemed to have an equal share in the net contributions to the account. Yet Gateway's reliance on § 5134(b) is misplaced. Subsection (b) of § 5134 creates presumptions that apply only "[i]n the absence of proof otherwise" of the actual amount of net contributions. Cal. Probate Code § 5134(b) (emphasis added); see id., Law Revision Comm'n Comments (subsection (b) "provides a clear rule concerning the amount of 'net contribution' in the absence of proof of a different amount") (emphasis added). Here, there is no absence of proof regarding the source or amount of each of the signatories' net contributions to the account, so there is no evidentiary gap to fill with the presumptions set forth in § 5134(b).

Because Mr. Fisher established ownership of the levied account, the burden shifted to Gateway to establish it had a superior interest in it. Gateway tried to meet its burden by questioning the credibility of Mr. Fisher's evidence, but the Court found its arguments unpersuasive. Gateway's contention that Ms. Fisher may have been the real owner of the tractor because the tractor sat on her property for a period of time, and because she helped sell it using her Craigslist account, amounted to speculation. The phone number provided in the Craigslist listing was Mr. Fisher's. The fact that the tractor was sold for cash is not inherently incredible, particularly since Mr. Fisher was able to produce his copy of the invoice for the transaction.

For the same reasons, Gateway failed to demonstrate that the Kubota tractor was property of Ms. Fisher on which it had a secured lien. See Chrysler Credit Corp. v. Superior Court, 17 Cal. App. 4th 1303, 1311 (1993) ("[T]he general

rule is that the secured party … has the burden of tracing funds received from the sales of collateral so as to show that they are in fact the identifiable proceeds of those sales.").

In sum, the Court finds that Mr. Fisher has proved by a preponderance of the evidence that he is the owner of the funds in the levied account. Therefore, his third-party claim is valid.

## III. CONCLUSION AND ORDER

For the reasons discussed above, the Court finds that William W. Fisher has a valid third-party claim and is entitled to the return of the levied funds. Three court days after the entry of this order, assuming there are no objections, the Court will issue an order directing the U.S. Marshal to return the funds to Mr. Fisher.

IT IS SO ORDERED.

Dated: August 7, 2017

Barry Ted Moskowitz, Chief Judge
United States District Court